**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**ROBERT LEE CHILDERS,**

        **Petitioner,**

**v().**                              **Civil Action No. 1:10cv183**
                                     **Criminal Action No. 1:07cr17**
**UNITED STATES OF AMERICA,**      **(Judge Keeley)**

        **Respondent.**

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

On October 21, 2010, the *pro se* petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody with a memorandum in support.[1] The Government was ordered to respond on October 26, 2010.[2] After its November 8, 2010 Motion for Extension of Time to File Response[3] was granted by Order entered November 8, 2010,[4] the Government filed its response on February 10, 2011.[5] Petitioner's March 7, 2011 Motion for Extension of Time to File Reply [6] was granted by Order[7] entered March 8, 2011 and he filed his reply on May 31, 2011.[8]

### II. FACTS

---

[1] Dkt.# 52 and 53.

[2] Dkt.# 56.

[3] Dkt.# 59.

[4] Dkt.# 60.

[5] Dkt.# 64.

[6] Dkt. 67.

[7] Dkt.#69.

[8] Dkt.# 71.

## A.    Conviction and Sentence

On January 7, 2008, the petitioner signed a plea agreement by which he agreed to plead guilty to Count Two of a 4-count indictment, distribution of crack cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).[9]  The plea agreement contained no waiver of petitioner's appellate and collateral attack rights, nor any stipulation regarding drug relevant conduct.

On January 7, 2008, the petitioner entered his plea in open court.  (Dkt.# 62).  He testified that he was 34 years old, had gone to school until the end of 10th grade and was currently enrolled in GED classes.  (Id. at 11).  He could read, write and understand the English language.  (Id.).  He denied taking any medicine, drugs or alcohol within the previous twenty-four hours, other than a painkiller called "Nioxin or something" for chronic leg pain from a prior crush injury, taken the evening before.  (Id. at 14).  He testified that he had had no recent treatment for addiction to narcotics but had signed up for a drug treatment program that had not yet begun.  (Id. at 12).  He denied any physical or mental impairment or other disability that would have prevented his full participation in the hearing.  (Id. at 11 - 12).

During the plea hearing, the Assistant U.S. Attorney ("AUSA") read aloud in open court each paragraph of the plea agreement.  (Id. at 5 -7). The petitioner stated he understood and agreed with all the terms and conditions of the plea agreement and had read and fully discussed it with his attorney before signing it.  (Id. at 21).  The Court then reviewed all the rights petitioner was giving up by pleading guilty. (Id. at 27 - 28 and 33 -37).  During the plea hearing, in lieu of having its

---

[9]Dkt.# 23.

witness, the case agent, provide an independent basis in fact,[10] the Government established a factual basis for the plea via a summary of the evidence provided by the Assistant U.S. Attorney ("AUSA"), to. (Id. at 40 - 41). The petitioner did not contest the factual basis of the plea.

After the government presented the factual basis of the plea, the petitioner advised the Court that he was guilty of Count Two of the Indictment. (Id. at 42). The petitioner further stated under oath that no one had attempted to force him to plead guilty, and that he was pleading guilty of his own free will. (Id. at 26 and 43). In addition, he testified that the plea was not the result of any promises other than those contained in the plea agreement. (Id. at 26). The petitioner testified that his attorney had adequately represented him, had done nothing improperly, and that he was completely satisfied with his representation. (Id. at 16 - 20). Finally, the petitioner said he was in fact guilty of the crime to which he was pleading guilty. (Id. at 26 - 27).

At the conclusion of the hearing, the Court determined that the plea was made freely and voluntarily, the petitioner understood the consequences of pleading guilty, and the elements of the crime were established beyond a reasonable doubt. (Id. at 43). The petitioner did not object to the Court's finding.

A sentencing hearing was held on May 12, 2008.[11] After hearing testimony from multiple witnesses regarding objections filed by defense counsel, the hearing was continued, resuming on February 6, 2009.[12] After considering several factors, including the circumstances of the crime,

---

[10] The plea hearing was originally intended to be a PreTrial hearing; once it was known that it would become a plea hearing, the case agent was already attending scheduled training in Charleston and could not be present.

[11] Dkt.# 38.

[12] Dkt.# 48.

3

petitioner's drug addiction, his obstruction of justice via threats to witnesses, and the sentencing objectives of punishment, the Court sentenced the petitioner to a term of one hundred thirty-five months incarceration[13] with credit for time served, to be followed by three years of supervised release.[14]

**B.    Appeal**

Petitioner filed a timely notice of appeal on February 23, 2009.[15]  On appeal, he raised an as-applied Sixth Amendment challenge to his sentence, arguing that his sentence was unreasonable under 18 U.S.C. §3553(a), because the judicially-found factual determination of the amount of drugs attributable to him violated his Sixth Amendment right to a jury trial.

On March 15, 2010, The Fourth Circuit Court of Appeals affirmed the petitioner's conviction and sentence in an unpublished, *per curiam* decision.[16]   Mandate issued on April 6, 2010.[17] Petitioner's May 19, 2010 petition for a writ of *certiorari* was denied by the U.S. Supreme Court on June 22, 2010.

**C.    Federal Habeas Corpus**

The raises two grounds of ineffective assistance of counsel at sentencing, contending that counsel failed to:

1)  object to the Government's use of West Virginia State Trooper Sgt. Joe Adams as an expert witness; and

---

[13]The guideline sentencing range was 121 to 151 months of imprisonment.

[14]Dkt.# 36.

[15]Dkt.# 40.

[16]Dkt.# 49.

[17]Dkt.# 51.

4

2) failed to argue that substantial drug amounts should have been deducted from the amount of drugs attributed to petitioner's relevant conduct for the drug use of co-conspirators and other witnesses.

As relief, he requests that his sentence be vacated and a new sentencing hearing be convened, or in the alternative, he be granted an evidentiary hearing.

The Government contends the petitioner's claims are without merit and do not meet the standards set forth in Strickland v. Washington, 466 U.S. 668 (1984).[18]

In his reply, the petitioner reiterated his contentions and argues Trooper Adams' estimates of drug amounts lacked any indicia of reliability and were "based solely on the unreliable testimony of known drug addicts."[19]

**D.     Recommendation**

Based upon a review of the record, the undersigned recommends that the petitioner's §2255 motion be denied and dismissed from the docket because the petitioner's claims are without merit.

### III. ANALYSIS

**A.     Petitioner's Burden of Proof**

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States

---

[18]Dkt.# 64 at 1.

[19]Dkt.# 71 at 1.

of America, 2006 WL 36859 *2 (E.D.Va. Jan. 4, 2006).

**<u>Ground One</u>: Whether Trial Counsel's Performance was Ineffective for Failing to Object to the Government's Use of Trooper Adams as an Expert Witness at Sentencing.**

Petitioner contends that trial counsel was ineffective at sentencing for his failure to object to the Government's use of West Virginia State Trooper Joe Adams as an expert witness on the subject of drug amounts to prove petitioner's relevant conduct.

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that the petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." <u>Strickland</u> at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. <u>Id.</u> at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in <u>Strickland</u>, defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Lockhart v. Fretwell</u>, 506 U.S. 364 (1993).

A Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. <u>Strickland</u> 466 U.S. at 689-90. Moreover, there are no absolute rules in determining what is reasonable performance. See <u>Hunt v. Nuth</u>, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is viewed on the facts of a particular case and at the time of counsel's conduct).

Here, petitioner alleges that at sentencing, West Virginia State Trooper Sgt. Joe Adams

("Adams") provided expert testimony regarding allegedly uncertain drug amounts[20] attributable to petitioner in his relevant conduct determination, despite not being qualified to be used as such, and counsel failed to object.

Petitioner's claim lacks merit. Adams, assigned to the West Virginia State Police's Bureau of Criminal Investigation, was the case agent involved in the investigation of petitioner's drug distribution conspiracy. He did not testify as an "expert witness" at sentencing. Rather, his appearance at the sentencing hearing was as an eyewitness with direct firsthand knowledge, based on his work with the confidential informant(s) ("CIs") who made drug buys from petitioner. He also acted as a CI himself, and was present when petitioner was arrested. (Dkt.# 37, ¶¶ 17 and 19 at 6). Adams not only testified as to his first-hand knowledge of certain facts, but also, as case agent, as to petitioner's historical drug relevant conduct, summarizing and providing high/low range calculations of the drug amounts petitioner sold, based on his interviews with petitioners buyers and their testimony at the sentencing hearing. Defense counsel did object when appropriate and also vigorously cross-examined Adams, eliciting his admission that several witnesses had testified that petitioner, himself a heavy drug user, consumed at least 60 - 70% of the drugs he purchased to distribute, and therefore could not have distributed all the drugs witnesses testified to having seen him possess. (Dkt.# 34 at 75 and 81 - 82).

Counsel cannot be found deficient for failing to object when there was no basis to do so and where objection would be futile. Since petitioner can prove neither deficient performance or prejudice, he has failed in his burden under Strickland and this claim should be denied.

**Ground Two: Whether Trial Counsel's Performance at Sentencing was Ineffective for Failing**

---

[20] Multiple witnesses testified as to having seen petitioner with "golf ball sized" amounts of crack cocaine on more than one occasion.

**to Argue that Substantial Drug Amounts Should have been Deducted from the Amount of Drugs Attributed to Petitioner's Relevant Conduct for the Drug Use of Co-Conspirators.**

Petitioner contends that defense counsel's performance at sentencing was deficient because he failed to argue that substantial drug amounts should have been deducted from petitioner's relevant conduct for the amounts consumed by his co-conspirator and former girlfriend Johnna Adams, as well as other unspecified witnesses, in addition to the deduction the Court made for petitioner's own drug use.[21]

A review of the sentencing hearing transcript reveals that the only witness who testified as to any specific drug amounts purchased by petitioner for distribution but personally consumed by either themselves or others without money changing hands, was Johnna Adams ("Miss Adams"), petitioner's former girlfriend. Although Miss Adams testified that during the time she and petitioner dated, they used to "get high together like every day,"[22] her testimony also reveals that at most, she and petitioner only dated from some time in August of 2006 until late September, 2006, when she broke up with him.[23] Accordingly, at best, the total amount of time that any sharing of drugs occurred for the personal consumption of others, rather than for only petitioner's personal consumption, would be anywhere from four to eight weeks with Miss Adams.

A review of the sentencing hearing transcript also reveals that defense counsel objected appropriately during testimony about amounts of drug relevant conduct, vigorously cross-examined witnesses as to amounts petitioner personally consumed, and challenged West Virginia State Trooper

---

[21]Dkt.# 52 at 4.

[22]No testimony was elicited from her as to the amount that she consumed.

[23]The reason she broke up with petitioner was because he threatened to shoot her mother in retaliation for her mother's having turned him in for drug distribution.

Sgt. Joe Adams' high - low drug amount calculations based on petitioner's personal consumption. After testimony by several witnesses that petitioner personally consumed anywhere from 60% to 75%[24] of the drugs he purchased for distribution,[25] the Court discounted Adams' high-low drug relevant conduct calculations by 65%, to take into account what petitioner personally consumed, resulting in a two-level reduction in petitioner's base offense level. (Dkt.# 34 at 91 - 92). During this calculation, defense counsel actively participated, was given an opportunity to and did "check the math" on Sgt. Adams' calculations and recommended to the Court what he thought should be discounted based on personal use. (Id. at 91).

Petitioner has presented no evidence to show that counsel's performance in this regard was substandard. The uncertainty regarding amounts consumed personally by petitioner and not distributed were taken into account in the discounting of his total final drug relevant conduct calculation. Any amounts consumed by Miss Adams without the exchange of money can be considered *de minimis*, given the brevity of her relationship with petitioner and the fact that at least some of the drugs Miss Adams obtained from petitioner were purchased and were therefore

---

[24] One witness, Stephanie Kisamore, testified at sentencing that petitioner personally consumed 60 - 65% of the drugs he purchased for distribution, but had previously given a statement saying petitioner personally consumed 60 - 75% of the drugs he purchased for distribution. (Dkt.# 42 - 43).

[25] Five witnesses testified for the Government regarding petitioner's drug relevant conduct. Timothy Riffle gave no testimony regarding either amounts of drugs petitioner personally used or any amounts petitioner shared with him or others. Stephanie Kisamore testified that petitioner used 60% - 65%of the cocaine he purchased for distribution and that although she had "tried it before," most of the 60% expended for personal use was used by petitioner "hisself." (Dkt.# 34 at 43 - 44). Amber Hawn Tasker testified that petitioner used 70% of the drugs he purchased for his own personal use; she provided no testimony as to any drug use of her own. (Id. at 55). Johnna Adams testified at the May 12, 2008 hearing that she was then nineteen years old (Id. at 60); had begun dating petitioner in August of 2006 just before her 18th birthday on September 3, 2006 (Id. at 61); and that she and petitioner would "get high together like every day." (Id. at 61). She further testified that petitioner threatened to shoot her mother for turning him in for selling drugs and getting him arrested "either right after or right before the first hearing." (Id. at 66). She testified on cross-exam that the last time she ever saw petitioner was right after he threatened to shoot her mother. (Id. at 65 - 66 and 69). Petitioner was arrested on September 25, 2006 after a drug buy using Johnna's mother as a CI. (Dkt.# 37, ¶ 19 at 6).

9

"distributed."[26]

Because petitioner has not proved deficient performance, he cannot prove prejudice. Furthermore, this claim is merely another attempt to relitigate the same claim petitioner already raised and lost on appeal, that his sentence was unreasonable because it was substantially increased based upon judicially-found facts about drug amounts, not facts determined by a jury, albeit now with an ineffective assistance of counsel twist. Relief should be denied.

## IV. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the petitioner's §2255 motion be **DENIED** and **DIMISSED with prejudice** from the docket. Further, petitioner's requests for vacation of his sentence and a new sentencing hearing, or in the alternative, an evidentiary hearing, be **DENIED** as moot.

**Within fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation**. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985): United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se*

---

[26] The witness Stephanie Kisamore testified that she observed petitioner sell drugs to various people and "I've seen him sell to Johnna." (Dkt.# 34 at 38).

petitioner by certified mail, return receipt requested, to his last known address as shown on the docket.

DATED: August 17, 2011

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE